**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Clarus Medical, LLC,                                           Civil No. 05-934 (DWF/FLN)
a Minnesota corporation,

        Plaintiff,

v.                                                                     **MEMORANDUM**
                                                                       **OPINION AND ORDER**

Myelotec, Inc.,
a Georgia corporation,

        Defendant.

---

Arne M. Olson, Esq., Joseph M. Kuo, Esq., and Martin J. Corn, Esq., Olson & Hierl, Ltd.; and Galen E. Watje, Esq., and Steven Moore, Esq., Sisam & Watje, counsel for Plaintiff.

Gregory L. Peters, Esq., and Suzanne V. Hansen, Esq., Seaton Beck Peters Bowen & Feuss, PA, counsel for Defendant.

---

## Introduction

The above-entitled matter came before the undersigned United States District Judge on August 5, 2005, pursuant to a Motion for Preliminary Injunction filed by Clarus Medical, LLC ("Clarus"). In its Verified Complaint, Clarus asserts claims for Trademark Infringement and Declaratory Judgment. Defendant Myelotec, Inc. ("Myelotec"), opposes Clarus's motion. For the reasons set forth below, Clarus's motion is denied.

**Background**

Clarus is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.  The company is engaged in the business of selling medical products, including devices used in spinal applications.

On December 27, 2001, Clarus entered into an exclusive Agreement and License (the "License") with Visionary Biomedical, Inc. ("VBI").  (Complaint at Ex. 1.)  According to the Complaint, VBI has since ceased operations and no longer exists as a corporate entity.  However, the License provides that "[t]his Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns."  (*Id.* at 10, § 21(j).)  Myelotec is VBI's successor-in-interest to the License as of December 2004.

The License provides that Clarus has the exclusive right to sell, market, and distribute the "Products" defined in Exhibit A to the License.  (*Id.* at 1, § 1(a).)  In addition, the License gave Clarus the "exclusive right in the [United States] to use the Marks identified on Exhibit C attached (the "VBI Marks") in connection with the marketing, advertising, sale and distribution of the Products."  (*Id.* at 4, § 10(c).)  The trademarks delineated by Exhibit C are the names "Myelotec" and "NaviCath."

The License further provided that VBI was to supply the Products to Clarus at specified prices. (*Id.* at § 3.)  Clarus contends that since Myelotec succeeded VBI, Myelotec has delayed shipment on Products ordered by Clarus, and failed to fill other orders.  As a result, Clarus asserts that it has been unable to maintain an adequate inventory of certain Products specified in the License.

On December 22, 2004, Myelotec President Jerry Birchem emailed Clarus President Tom Barthel, notifying Barthel that Myelotec had succeeded VBI under the License.  (Complaint at Ex. 2.)

The email stated, "it is imperative that we find a way for Clarus to increase the monthly sales and purchase dollars immediately or agree to mutually terminate the current contract." (*Id.*) Almost immediately upon acquiring the License, and in a flurry of letters sent to Clarus, Myelotec began to allege that Clarus was in breach of the License. (Complaint at ¶¶ 30, 39, 42, 44-46, 48, 50.) However, Myelotec continued to ship Products under the License to Clarus. (*Id.* at 51.)

Clarus also asserts that Myelotec offered Products bearing trademarks to which Clarus holds the exclusive rights, thus violating the License and harming Clarus's business. Specifically, Clarus points to an April 2005 edition of "Pain Physician" magazine that included a full-page advertisement for the "Endoscope Guided VGC 2000, 2010" and the "Fluoroscope Guided NaviCath 2017." The advertisement invited customers to "Come to the source. MYELOTEC®." Clarus contends that these two products are specified in the License and that Clarus has sole distribution rights over them. Clarus maintains that it never authorized Myelotec to encroach on its exclusive trademark or distribution rights for these products. Myelotec maintains that it only placed one advertisement and that it has no intention to run any further advertisements.

Clarus asserts that, as a result of the delays in receiving their supplies of Products, their business has been harmed. Clarus contends that because of its limited inventory of the Products, Clarus will not be able to fill its customers' orders. Furthermore, Clarus alleges that in light of Myelotec's advertisement in the Pain Physician magazine, Clarus anticipates that Myelotec will not fill Clarus's orders, but, rather, that Myelotec will sell those same Products directly to Myelotec's own customers that are generated by the advertisement.

Myelotec maintains that it lawfully terminated the License in accordance with its terms. Myelotec asserts that it terminated the License because Clarus sold a product that competes with Products specified in the License, Clarus failed to purchase minimum monthly sales volumes, and Clarus failed to inventory minimum product quantities.

Clarus filed the Complaint in this matter on May 16, 2005, and its Motion for Preliminary Injunction on June 13, 2005. Myelotec demanded arbitration of the matter pursuant to the terms of the License on June 21, 2005. The arbitration provision of the License provides that "Except as otherwise provided in Section 20(d) below, any and all disputes arising out of or in connection with this Agreement shall be solely and finally settled by arbitration conducted in Atlanta, Georgia by a single arbitrator selected by the American Arbitration Association." (Complaint Ex. 1 at 8, § 20(a).) Section 20(d) provides: "Notwithstanding any provision of this section to the contrary, each party shall be entitled to seek injunctive and other equitable relief in any court or forum of competent jurisdiction to enforce the provisions of this Agreement, including, without limitation, Section 18 of this Agreement." (*Id.* at 9.)

## Discussion

At oral argument on this matter, Myelotec asserted that this Court may not order injunctive relief because the Court's jurisdiction was divested by the arbitration provision in the License. In support of its contention, Myelotec relies upon the Eighth Circuit's decision in *Manion v. Nagin*, 255 F.3d 535 (8th Cir. 2001). In *Manion*, the Eighth Circuit determined that the language of an employment agreement that allowed the parties to request "interim relief" and "injunctive relief in case of any breach" was not sufficient "qualifying contractual language" to allow the plaintiff to request

CASE 0:05-cv-00934-DWF-JJG   Document 44   Filed 09/08/05   Page 5 of 6

injunctive relief from the District Court and thus, at least temporarily, bypass the arbitration provisions.

*Id.* at 538-39.  The Eighth Circuit defined "qualifying contractual language" as "language which

provides the court with clear grounds to grant relief without addressing the merits of the underlying

arbitrable dispute."  *Id.* (quoting *Peabody Coalsales Co. v. Tampa Elec. Co.*, 36 F.3d 46, 47 n.3

(8th Cir. 1994).)   The Court stated:

> It is true that the Agreement contemplates the possibility of interim judicial relief in the event of a dispute between the parties.  It does not provide that a party is automatically entitled to injunctive relief, however, but only that a party may request such relief. Unlike the *Peabody* contract, it does not specify that the parties' "respective obligations . . . shall be continued in full by the parties during the dispute resolution process."  The provision allowing a party to request interim relief has been fulfilled since Manion filed a motion for a preliminary injunction and it was ruled on by the district court.  Another provision in the Agreement states that a party is entitled to injunctive relief "in case of any breach," but in order to issue such relief the district court would have been required to determine that a breach had occurred and to have made a determination on the merits of the underlying dispute, an issue for the arbitrator.

*Id.* at 539 (internal citations omitted).

The Court finds that the language in the License at issue here is insufficient to allow the Court

authority to consider Clarus's request for injunctive relief.  The language of the License that allows for

injunctive relief is a general clause and does not specify the grounds upon which the Court may grant

such relief.  *See id.*  Nor does it allow the Court to grant relief without the Court addressing the merits

of the underlying dispute.  *See id.*  Although the Court is troubled by the notion that Myelotec's counsel

could not indicate the purpose of the injunctive relief clause as written, the Court finds that the language

providing for injunctive relief is not legally distinguishable from that in *Manion*.  Because the License

does not have "qualifying contractual language" that permits the Court to consider Clarus's request for injunctive relief, the Court need not address further the merits of Clarus's request.[1]

Accordingly, **IT IS HEREBY ORDERED THAT**:

1.      Plaintiff's Motion for Preliminary Injunction (Doc. No. 18) is **DENIED**.

Dated:  September 9, 2005                              s/Donovan W. Frank
                                                      DONOVAN W. FRANK
                                                      Judge of United States District Court

---

[1]      The Court finds it somewhat bothersome that the crucial issue in this case was raised primarily at oral argument on the matter.  If Clarus takes the position that it was unable to fully respond to this issue, it may either request leave to file a motion to reconsider or brief the issue as part of its response to Myelotec's Motion to Compel Arbitration.