**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Clarus Medical, LLC,                                                Civil No. 05-934 (DWF/JJG)
a Minnesota corporation,

           Plaintiff,

v.                                                                                   **MEMORANDUM**
                                                        **OPINION AND ORDER**

Myelotec, Inc.,
a Georgia corporation,

           Defendant.

___

Arne M. Olson, Esq., Joseph M. Kuo, Esq., and Martin J. Corn, Esq., Olson & Hierl, Ltd.; and Galen E. Watje, Esq., and Steven Moore, Esq., Watje & Moore, counsel for Plaintiff.

Gregory L. Peters, Esq., and Thomas R. Revnew, Esq., Seaton Beck Peters Bowen & Feuss, PA, counsel for Defendant.

___

**Introduction**

The above-entitled matter came before the undersigned United States District Judge on November 1, 2005, pursuant to a Motion to Dismiss or Stay Litigation and Compel Arbitration filed by Defendant Myelotec, Inc. ("Myelotec"). In its Verified Complaint (the "Complaint"), Clarus Medical, LLC ("Clarus"), asserts claims for Trademark Infringement and Declaratory Judgment. For the reasons set forth below, Myelotec's motion is granted.

**Background**

Clarus is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. The company is engaged in the business of selling medical products, including devices used in spinal applications.

On December 27, 2001, Clarus entered into an exclusive Agreement and License (the "License") with Visionary Biomedical, Inc. ("VBI"). (Complaint at Ex. 1.) According to the Complaint, VBI has since ceased operations and no longer exists as a corporate entity. However, the License provided that "[t]his Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns." (*Id.* at 10, ¶ 21(j).) Myelotec is VBI's successor-in-interest to the License as of December 2004.

The License provided that Clarus has the exclusive right to sell, market, and distribute the "Products" defined in Exhibit A to the License. (*Id.* at 1, ¶ 1(a).) In addition, the License gave Clarus the "exclusive right in the [United States] to use the Marks identified on Exhibit C attached (the "VBI Marks") in connection with the marketing, advertising, sale and distribution of the Products." (*Id.* at 4, ¶ 10(c).) The trademarks delineated by Exhibit C are the names "Myelotec" and "NaviCath."

The License further provided that VBI was to supply the Products to Clarus at specified prices. (*Id.* at ¶ 3.) Clarus contends that soon after Myelotec succeeded VBI, Myelotec delayed shipment on Products ordered by Clarus and failed to fill other orders. As a result, Clarus asserts that it has been unable to maintain an adequate inventory of certain Products specified in the License.

On December 22, 2004, Myelotec President Jerry Birchem emailed Clarus President Tom Barthel, notifying Barthel that Myelotec had succeeded VBI under the License. (Complaint at Ex. 2.)

The email stated, "it is imperative that we find a way for Clarus to increase the monthly sales and purchase dollars immediately or agree to mutually terminate the current contract." (*Id.*)  In addition, Myelotec began to allege that Clarus was in breach of the License.  (Complaint at ¶¶ 30, 39, 42, 44-46, 48, 50.)  Specifically, on April 15, 2005; April 21, 2005; and April 26, 2005, Myelotec sent notices to Clarus stating that the License had been terminated.  (*Id*. at Exs. 12, 14, 16.)  However, Myelotec continued to ship Products to Clarus as specified under the License.  (*Id.* at 51.)

Clarus asserts that Myelotec offered Products bearing trademarks to which Clarus holds the exclusive rights, thus violating the License and harming Clarus's business.  Specifically, Clarus points to an April 2005 edition of "Pain Physician" magazine that included a full-page advertisement for the "Endoscope Guided VGC 2000, 2010" and the "Fluoroscope Guided NaviCath 2017."  The advertisement invited customers to "Come to the source.  MYELOTEC."[1]  Clarus contends that these two products are specified in the License and that Clarus has sole distribution rights over them.  Clarus maintains that it never authorized Myelotec to encroach on its exclusive trademark or distribution rights for these products.

Clarus asserts that, as a result of the delays in receiving their supplies of Products, their business has been harmed.  Clarus contends that because of its limited inventory of the Products, Clarus will not be able to fill its customers' orders.  Furthermore, Clarus alleges that in light of Myelotec's advertisement in the Pain Physician magazine, Clarus anticipates that Myelotec will not fill Clarus's

---

1       Myelotec maintains that it only placed one advertisement and that it has no intention to run any further advertisements.

orders, but, rather, that Myelotec will sell those same Products directly to Myelotec=s own customers that are generated by the advertisement.

Myelotec maintains that it lawfully terminated the License in accordance with its terms. Myelotec asserts that it terminated the License because Clarus sold a product that competes with Products specified in the License, Clarus failed to purchase minimum monthly sales volumes, and Clarus failed to inventory minimum product quantities.

Clarus filed the Complaint in this matter on May 16, 2005, and filed its Motion for Preliminary Injunction on June 13, 2005.[2]  The Complaint asserts two counts: (1) trademark infringement; and (2) declaratory judgment.  Clarus requests that the Court enter the following declaratory relief:

> (1)  the License is in effect, valid and enforceable, and Clarus has met all of its obligations under the License;
>
> (2) Myelotec has infringed Clarus's exclusive trademark rights under the License by using the marks "Myelotec" and "NaviCath" in the United States in connection with the marketing, advertising, sale, and distribution of the Products including, but not limited to, the 2000 Catheter, the 2010 Catheter, and the 2017 NaviCath;
>
> (3)  Myelotec is obligated under the License to cease and desist all efforts to market, advertise, sell, or distribute the Products covered under the License other than to sell the Products to Clarus;
>
> (4)  Myelotec is obligated under the License to fill Clarus's orders for the Products covered under the License; and
>
> (5)  Myelotec is obligated to give Clarus an accounting for all sales of the Products covered under the License.

---

2    By its Order dated September 8, 2005, this Court denied Clarus's Motion for Preliminary Injunction.

4

(Complaint at 10-11.)  Further, Clarus requests that the Court enter a permanent injunction enjoining and restraining Myelotec from using the "Myelotec" and "NaviCath" marks; from marketing, advertising, selling, or distributing the Products covered under the License; and from failing to fill or delaying to fill Clarus's orders for Products covered by the License.  (*Id.* at 11.)  Clarus does not assert a request for damages.

Myelotec demanded arbitration of the matter pursuant to the terms of the License on June 21, 2005.  On August 2, 2005, Myelotec filed the present Motion to Dismiss or Stay Litigation and Compel Arbitration.  The arbitration provision of the License provides:

> (a) Except as otherwise provided in Section 20(d) below, any and all disputes arising out of or in connection with this Agreement shall be solely and finally settled by arbitration conducted in Atlanta, Georgia by a single arbitrator selected by the American Arbitration Association.  The arbitrator shall be familiar with business transactions shall be impartial and shall not have been employed by or affiliated with either party or their affiliates.  The arbitration may be initiated by either party by written notice to the other specifying in reasonable detail the dispute being submitted to arbitration.  The parties renounce all recourse to litigation and agree that the award of the arbitrator shall be final and subject to no judicial review.  The arbitrators shall conduct the proceedings pursuant to the Commercial Arbitration Rules of the American Arbitration Association, as now or hereafter amended (the "Rules"); provided that the provisions of this Agreement shall prevail in the event of any conflict between the Rules and the provisions of this Agreement.  All decisions of the arbitrator shall be in writing and submitted to both parties.
>
> . . .
>
> (d) Notwithstanding any provision of this section to the contrary, each party shall be entitled to seek injunctive and other equitable relief in any court or forum of competent jurisdiction to enforce the provisions of this Agreement, including, without limitation, Section 18 of this Agreement.

(Complaint Ex. 1 at 8, ' 20.)  Myelotec notes that prior to bringing this litigation, Clarus held the position that this dispute was arbitrable.  (Complaint at Exs. 8, 13, and 15.)

**Discussion**

Through the Federal Arbitration Act ("FAA"), Congress has established a strong federal policy in favor of arbitration. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *see also Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695 (8th Cir. 1994). In a petition to compel arbitration, the Court is required to determine whether: (1) a valid agreement to arbitrate exists between the parties; and (2) the specific dispute is within the scope of that agreement. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868 (8th Cir. 2004); *Houlihan*, 31 F.3d at 694-95. "The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration." *Medcam, Inc. v. MCNC*, 414 F.3d 972, 975 (8th Cir. 2005). The question of scope goes to whether the parties have agreed to arbitrate a particular claim, but not to the potential merits of that claim. *Id*. (citations omitted). An order to compel arbitration should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id*. (quoting *Lyster v. Ryan's Family Steak Houses, Inc*., 239 F.3d 943, 945 (8th Cir. 2001)) (citations omitted). However, parties cannot be forced to submit to arbitration a dispute that the parties have not agreed to submit, because "arbitration is a matter of consent, not of coercion." *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999) (citations omitted).

Clarus does not dispute that the arbitration clause is valid, but rather asserts that this particular dispute does not fall within the provisions of the arbitration agreement because the parties made requests for injunctive or equitable relief non-arbitrable by virtue of the License. In other words, Clarus

asserts that the relief that it is seeking is expressly excluded from the scope of the License's arbitration provision.

Here, the Court finds that the arbitration clause of section 20(a) encompasses the relief that Clarus requests. In *Medcam*, the Eighth Circuit held that a "broadly worded" arbitration provision applying to "[a]ll disputes, controversies, or differences arising out of or in connection with this Agreement or the making thereof" applied to "*all* disputes regarding the agreement," and thus subjected a dispute about a non-compete provision to arbitration. 414 F.3d at 975 (emphasis in original).

The language of section 20(a) is nearly identical to that of the *Medcam* arbitration clause. Here, the Court is asked to interpret a dispute that goes to the heart of the contract language. Similar to the dispute in *Medcam*, Clarus's claims "necessarily arise from the [License] because they depend upon an interpretation of the [License] in light of the disputed facts." *Id*. Clarus's claims arise from trademark rights that exist only as a result of the License. In addition, Clarus's claims arise from Myelotec's assertions, made prior to this litigation, that Clarus had breached the License, and from Myelotec's subsequent actions to use the Marks and market the Products covered by the License. Clarus's claims for declaratory and injunctive relief clearly fall within the scope of the broad arbitration clause of section 20(a).

The Court does not find merit in Clarus's assertions that *Medcam* is inapplicable because it did not involve interpretation of a clause similar to section 20(d), which Clarus asserts excludes injunctive relief from arbitration. Section 20(d) does not merit a different outcome. Section 20(d) does not <u>exclude</u> injunctive relief from the arbitration clause of section 20(a), but rather provides that each party is "entitled" to seek injunctive relief for some disputes. This language does not mandate that such

disputes be brought before a court rather than an arbitrator. In fact, section 20(d) states that each party may seek such relief "in any court or forum of competent jurisdiction." This language allows Clarus to bring a demand for injunctive or equitable relief before the arbitrator.

Moreover, the Court finds that, on the facts of this case, Clarus's claims should properly be brought to arbitration. To the extent that Clarus is requesting injunctive relief, the Court finds that the language of the License is insufficient to allow the Court to grant injunctive relief of the nature requested. Consistent with the Court's determination in denying Clarus's motion for preliminary injunction, the Court finds that the License does not have the "qualifying contractual language" that "provides the Court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute." *Manion v. Nagin*, 255 F.3d 535, 538–39 (8th Cir. 2001) (citing *Peabody Coalsales Co. v. Tampa Elec. Co.*, 36 F.3d 46, 47 n.3 (8th Cir. 1994)); s*ee also* September 8, 2005 Order at 4-5. As such, Clarus's claims for injunctive relief are appropriately brought before the arbitrator, pursuant to the provisions of section 20(a).

In addition, the Court finds that Clarus's claims for declaratory relief should be brought to arbitration. First, in order to determine whether declaratory relief is appropriate, the Court would need to interpret terms of the License and wade into the merits of the underlying dispute. The Court would need to determine whether the parties' actions justified Myelotec's assertions of breach and termination and thus justified Myelotec's alleged use of the Marks and marketing of the Products covered by the License. To address the merits of this underlying dispute would be contrary to the precedent set forth in *Manion* and *Peabody*. Second, if the Court were to adjudicate Clarus's requests for declaratory relief, the Court would, in effect, read out the broad arbitration clause of section 20(a). In other words, so

long as a claim was disguised as a declaratory judgment action, that claim could be brought before a court and thus circumvent the very broad language of the arbitration clause. Finally, the Eighth Circuit has held that "declaratory relief *per se* is neither legal nor equitable." *Northgate Homes, Inc. v. City of Dayton*, 126 F.3d 1095, 1099 (8th Cir. 1997). As a result, Clarus's claims for declaratory relief do not fall within the scope of section 20(d).

For these reasons, the Court grants Myelotec's Motion to Stay Litigation and Compel Arbitration.[3]

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff=s Request for Leave to File a Motion to Reconsider is **DENIED**;

2. Defendant's Motion to Stay Litigation and Compel Arbitration (Doc. No. 18) is **GRANTED**.

Dated: November 30, 2005         s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 Judge of United States District Court

---

3   In so holding, the Court notes that its decision does not leave Clarus without relief. As noted above, Clarus may bring its claims before the arbitrator, and under the terms of the License, the arbitrator is entitled to grant injunctive or emergency relief. *See* License at § 20(d); *see also* Amer. Arbitration Rules R-34, O-1 (2005) (allowing arbitrator to award emergency or interim injunctive relief).